1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  STEVE EIDEN,
                                    NO. CIV. S-04-977 LKK/CMK
12           Plaintiff,

13       v.                                  O R D E R

14  HOME DEPOT USA, INC., dba
    HOME DEPOT #6609; and HD
15  PROPERTIES OF MARYLAND,

16           Defendants.
    _____/

17

18       Plaintiff, Steve Eiden, sues defendant, Home Depot, pursuant

19  to the American with Disabilities Act of 1990, 42 U.S.C. §§ 12101

20  et seq. ("ADA").   He also asserts state law claims.[1]. Defendant

21  moves for summary judgment asserting that plaintiff's suit is moot

22  by virtue of its remedial efforts, while plaintiff cross-moves on

23  _____

24       [1] Plaintiff  brings claims pursuant to Health and Safety Code
    Part 5.5 (California Health and Safety Code §§ 19955 et seq.), the
25  Unruh Act (California Civil Code §§ 51 et seq.), the Disabled
    Persons Act (California Civil Code §§ 54 et seq.), the Unfair
26  Business Practices Act (California Business and Professions Code
    §§ 17200 et seq.), and Negligence (California Civil Code § 1714).

                                    1

his ADA and Unruh Act claims.  Pl.'s Mot. at 2.  I decide the matter based on the pleadings, the parties' papers, and after oral argument.

## I.

### FACTS[2]

Plaintiff is a paraplegic who uses a wheelchair for mobility.  He is unable to walk, and has limited use of his arms.  Pl.'s SUF 1; Def.'s SUF 16.  Eiden has patronized the Home Depot located at 2580 Notre Dame Boulevard in Chico, California, for the past five-to-six years, and visits the store approximately two-to-three times a month.  Pl.'s SUF 2.  Eiden contends that he has encountered a number of barriers that have made it difficult for him to fully access the facility.  Pl.'s SUF 4.

On May 20, 2004, plaintiff filed a complaint, which alleges that he encountered "architectural barriers that denied him full and equal access."  Compl. at 4.  Attached to his complaint is a list of barriers, which he claims were the barriers "known by [him]."  Ex. A to Pl.'s Compl.  The complaint identifies the following thirteen "barriers":

(1) Tow-Away Signage at Parking Lot Entrance is difficult to read;

(2) The cross-slope of the route of travel from public streets, sidewalks, and transportation exceeds 2%, and is 7,3%;

(3) There is no directional signage along the route of travel from the public streets or sidewalks to the building entrance;

---

[2]  Facts are undisputed unless otherwise noted.

2

(4) There are no detectable warnings at the route for a person in a wheelchair traveling through vehicle areas to reach the ramp;

(5) The accessible parking spaces are not dispersed and located closest to the accessible entrances;

(6) Shopping carts were left in disabled parking spaces and access aisles creating an obstruction;

(7) The words "NO PARKING" are not painted in the access aisles;

(8) The ISA signage on the entrance door is only 36 inches above ground, making it difficult to see;

(9) Some aisles in the store were obstructed by merchandise narrowing the width of the aisles;

(10) The sales counter is too high, 44 inches in height at the customer service desk;

(11) There were no accessible check stands, and signage identifying accessible checkout aisle was not mounted on checkout locations;

(12) The compartment stall door in the men's restroom does not have a loop or U-shaped handle under the latch;

(13) The toilet paper dispenser projects 5 inches from the wall, and is set above the grab bar and in the space a person in a wheelchair needs for an approach to the toilet.

Plaintiff claims that subsequent to filing this action, he returned to defendant's premises in September 2004, and that despite his complaints, Home Depot failed to correct the architectural barriers.  Pl.'s SUF 5, 6.

On July 13, 2005, plaintiff asked his expert, Joe Card ("Card"), to visit the Home Depot in order to identify the architectural barriers that violate the ADA and to create a report. Pl.'s SUF 19.  Card identified the architectural barriers Eiden alleged in his complaint, but also identified additional barriers

1 which Eiden did not previously note.  Eiden claims he "now has

2 notice" of those barriers.  Pl.'s SUF 19.

3     On August 23, 2005, defendant filed for summary adjudication,

4 arguing that the suit is moot because defendant allegedly

5 eliminated the violations complained of in Eiden's complaint.

6 Def.'s Mot. at 1.  Plaintiff opposed this motion and moved for

7 further discovery under Fed. R. Civ. P. 56(f).  On September 14,

8 2005, the court granted this request so that plaintiff's expert

9 could return to the Home Depot "to determine if the previously

10 identified ADA violations have been removed."  September 14, 2005

11 Order at 3.

12     Card returned to defendant's premises for an inspection on

13 October 7, 2005.  Plaintiff's counsel instructed Card to "reinspect

14 the location and document any corrections made to the violations

15 that were identified in the first report."  Card Dec. at 2.  Card,

16 however, identified a myriad of other barriers which were not

17 previously identified by plaintiff in his complaint.  See Card

18 Dec. 2-5; Ex. A to Card Dec.  Discovery closed on October 4, 2005

19 pursuant to the court's scheduling order.

20     It is undisputed that certain conditions have been remediated.

21 The parties, however, dispute whether a number of other barriers

22 remain.

23 ////

24 ////

25 ////

26 ////

4

1                                    **II.**

2                                  **STANDARDS**

3        Summary judgment is appropriate when it is demonstrated that

4   there exists no genuine issue as to any material fact, and that the

5   moving party is entitled to judgment as a matter of law.  Fed. R.

6   Civ. P. 56(c); <u>See also</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,

7   157 (1970); <u>Secor Limited v. Cetus Corp</u>., 51 F.3d 848, 853 (9th

8   Cir. 1995).

9        Under summary judgment practice, the moving party

10               [A]lways bears the initial responsibility of
                 informing the district court of the basis for
11               its motion, and identifying those portions of
                 "the  pleadings,  depositions,  answers  to
12               interrogatories,  and  admissions  on  file,
                 together with the affidavits, if any," which
13               it  believes  demonstrate  the  absence  of  a
                 genuine issue of material fact.

14

15  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the

16  nonmoving  party  will  bear  the  burden  of  proof  at  trial  on  a

17  dispositive issue, a summary judgment motion may properly be made

18  in  reliance  solely  on  the  'pleadings,  depositions,  answers  to

19  interrogatories, and admissions on file.'"  <u>Id.</u>  Indeed, summary

20  judgment should be entered, after adequate time for discovery and

21  upon motion, against a party who fails to make a showing sufficient

22  to establish the existence of an element essential to that party's

23  case, and on which that party will bear the burden of proof at

24  trial.  <u>See</u> <u>id.</u> at 322.  "[A] complete failure of proof concerning

25  an essential element of the nonmoving party's case necessarily

26  renders all other facts immaterial."  <u>Id.</u>  In such a circumstance,

1  summary judgment should be granted, "so long as whatever is before

2  the district court demonstrates that the standard for entry of

3  summary judgment, as set forth in Rule 56(c), is satisfied." Id.

4  at 323.

5      If the moving party meets its initial responsibility, the

6  burden then shifts to the opposing party to establish that a

7  genuine issue as to any material fact actually does exist.

8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

9  586 (1986); See also First Nat'l Bank of Ariz. v. Cities Serv. Co.,

10  391 U.S. 253, 288-89 (1968); Secor Limited, 51 F.3d at 853.

11      In attempting to establish the existence of this factual

12  dispute, the opposing party may not rely upon the denials of its

13  pleadings, but is required to tender evidence of specific facts in

14  the form of affidavits, and/or admissible discovery material, in

15  support of its contention that the dispute exists. Fed. R. Civ.

16  P. 56(e); Matsushita, 475 U.S. at 586 n.11; See also First Nat'l

17  Bank, 391 U.S. at 289; Rand v. Rowland, 154 F.3d 952, 954 (9th Cir.

18  1998). The opposing party must demonstrate that the fact in

19  contention is material, i.e., a fact that might affect the outcome

20  of the suit under the governing law, Anderson v. Liberty Lobby,

21  Inc., 477 U.S. 242, 248 (1986); Owens v. Local No. 169, Assoc. of

22  Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992)

23  (quoting T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,

24  809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine,

25  i.e., the evidence is such that a reasonable jury could return a

26  verdict for the nonmoving party, Anderson, 477 U.S. 248-49; see

1  also Cline v. Industrial Maintenance Engineering & Contracting Co.,

2  200 F.3d 1223, 1228 (9th Cir. 1999).

3       In the endeavor to establish the existence of a factual

4  dispute, the opposing party need not establish a material issue of

5  fact conclusively in its favor.  It is sufficient that "the claimed

6  factual dispute be shown to require a jury or judge to resolve the

7  parties' differing versions of the truth at trial."  First Nat'l

8  Bank, 391 U.S. at 290; See also T.W. Elec. Serv., 809 F.2d at 631.

9  Thus, the "purpose of summary judgment is to 'pierce the pleadings

10  and to assess the proof in order to see whether there is a genuine

11  need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R.

12  Civ. P. 56(e) advisory committee's note on 1963 amendments); see

13  also International Union of Bricklayers & Allied Craftsman Local

14  Union No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir.

15  1985).

16       In resolving the summary judgment motion, the court examines

17  the pleadings, depositions, answers to interrogatories, and

18  admissions on file, together with the affidavits, if any.  Rule

19  56(c); See also In re Citric Acid Litigation, 191 F.3d 1090, 1093

20  (9th Cir. 1999).  The evidence of the opposing party is to be

21  believed, see Anderson, 477 U.S. at 255, and all reasonable

22  inferences that may be drawn from the facts placed before the court

23  must be drawn in favor of the opposing party, see Matsushita, 475

24  U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654,

25  655 (1962) (per curiam)); See also Headwaters Forest Defense v.

26  County of Humboldt, 211 F.3d 1121, 1132 (9th Cir. 2000).

7

1  Nevertheless, inferences are not drawn out of the

2  air, and it is the opposing party's obligation to produce a factual

3  predicate from which the inference may be drawn.  See Richards v.

4  Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

5  aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

6       Finally, to demonstrate a genuine issue, the opposing party

7  "must do more than simply show that there is some metaphysical

8  doubt as to the material facts. . . . Where the record taken as a

9  whole could not lead a rational trier of fact to find for the

10  nonmoving  party,  there  is  no  'genuine  issue  for  trial.'"

11  Matsushita, 475 U.S. at 587 (citation omitted).

12                                III

13                       PRELIMINARY QUESTIONS

14       Pending before the court are cross-motions for summary

15  judgment filed by both parties.  Home Depot asserts that the

16  thirteen architectural barriers alleged in the complaint no longer

17  exist. It maintains that no live controversy exists, and thus,

18  "[p]laintiff's ADA claim must be dismissed."  Defendant also

19  asserts that plaintiff lacks standing to maintain the other alleged

20  barriers.  Def.'s Mot. at 1.  Plaintiff cross-moves on the grounds

21  that defendant has failed to correct multiple barriers properly

22  before the court.  Plaintiff argues, inter alia, that defendant's

23  motion should be denied because there remain barriers which "were

24  identified by plaintiff's expert, and which relate to plaintiff's

25  disability," thus making the case a live controversy.  Pl.'s Mot.

26  ////

1   and Opp'n at 17.[3]

2        It is undisputed that a number of barriers alleged in

3   plaintiff's complaint were subsequently corrected by defendant.

4   The tow-away signage posted at the entrance to the store has

5   numbers that are two-and-a-half inches tall.  Def.'s SUF 5.

6   Defendant additionally installed the ISA symbol to the right of the

7   double doors at all three entrances to the store at a height of 60

8   inches above the ground to the center of the sign.  Home Depot

9   painted the words "no parking" on the pavement of the access aisles

10  to the van accessible parking lots."  Def.'s SUF 7.  Defendant

11  installed the ISA symbol above check out stand numbers one (1) and

12  six (6), as well as the check stand in the garden.  A U-shaped

13  handle on the designated accessible stall in the men's restroom was

14  installed and the toilet paper dispenser was positioned so it does

15  not protrude more than four (4) inches from the wall.  Def.'s SUF

16  13, 14.

17       Before addressing the merits of the case, however, I address

18  several threshold issues.

19  **A.   WHICH CLAIMS ARE ACTIONABLE?**

20       Preliminary to resolving the motions, the court must first

21  determine which architectural barriers are properly before the

22  court.  Plaintiff asserts claims based upon the thirteen barriers

23  alleged in his complaint and on those identified in the two Card

24  _____

25       [3]  Plaintiff has filed one brief which represents his motion
    for summary judgment as well as his opposition brief to defendant's
26  motion for summary judgment.

1    expert reports.  Defendant does not raise objections as to the

2    barriers alleged in plaintiff's complaint, but argues that

3    plaintiff lacks standing to bring suit as to the violations

4    discovered by Card and which were identified in his two reports.[4]

5    Below, I conclude that the violations identified in the first Card

6    report are actionable, but those contained in the second Card

7    report are not cognizable in the instant suit.

8         Defendant contends that plaintiff lacks standing to sue on

9    barriers that he did not personally encounter on his visits to Home

10   Depot.  It contends that "at the time he filed his complaint, Eiden

11   was not aware of and had not been affected by the alleged

12   violations identified in the Card Report."  Def.'s Rep. at 4.

13   Defendant asserts that allowing plaintiff to sue on the violations

14   in the reports would offend standing principles.  Put simply,

15   defendant argues that plaintiff is not entitled to allege

16   violations which were not alleged in his original complaint, citing

17   Access Now, Inc. v. South Florida Stadium Corp., 161 F.Supp.2d

18   1357, 1366 (S.D. Fla. 2001)(holding that a plaintiff's mere entry

19   into the stadium did not automatically confer upon him a

20   presumption of injury from any and all architectural barriers in

21   _____

22        [4]   Before the close of discovery, Card first visited
     defendant's premises on July 13, 2004 to identify barriers that
23   violate the ADA and other state law and to generate a report.  From
     that visit, Card identified a total of twenty-three barriers, some
     of which appear to overlap with the thirteen barriers plaintiff
24   identified and some which are newly identified barriers.
          On October 7, 2005, after the close of discovery, Card
25   returned to defendant's premises.  As a result of that visit, Card
     identified twenty-nine additional violations.  See Card Dec. 2-5;
26   Ex. A to Card Dec.

1   the stadium).  Defendant also relies on several cases which were

2   decided in this district.  See Martinez v. Longs Drugs Stores,

3   Inc., 2005 WL 2072013, *4 (E.D. Cal. 2005) and White v. GMRI, Inc.,

4   CIV-S-04-0465 DFL/CMK (E.D. Cal. 2004).

5        Plaintiff, on the other hand, argues that in addition to the

6   barriers alleged in his complaint, he is entitled to assert claims

7   contained in his experts' two reports because  "the ADA encompasses

8   all barriers that relate to that person's disability within the

9   entire subject public accommodation," not just the ones known to

10  plaintiff prior to filing the complaint.  Pl.'s Repl. at 6

11  (emphasis in the original). Plaintiff also contends that he can

12  allege further architectural barriers following the filing of his

13  complaint, relying on Pickern v. Holiday Quality Foods, Inc., 293

14  F.3d 1133 (9th Cir. 2002).  Pl.'s Repl. at 6.

15       The court recently had occasion to address the issue of

16  standing and the ADA in Wilson v. Pier 1 Imports, 413 F.Supp.2d

17  1130 (E.D. Cal. 2006).  As in Wilson, defendant in the case at bar

18  relies on a standard offered in White/Martinez that this court

19  believes is "unduly restrictive," and thus, the court cannot adhere

20  to it.  No purpose would be served by repeating the analysis

21  articulated in Wilson.  With respect to the two Card reports,

22  nothing in the ADA requires plaintiff to have personally

23  encountered all barriers in order to seek an injunction to remove

24  those barriers.

25       Nor is plaintiff's suit limited to the barriers that he

26  alleged in his complaint.  As this court previously explained,

1   "[o]nce plaintiff either encountered discrimination or learned of

2   the alleged violations through expert findings or personal

3   observation, he had 'actual notice' that defendant did not intend

4   to comply with the ADA."   See Wilson, 413 F.Supp.2d at 1134.   As

5   the court further noted,

6        "the injury-in-fact requirement of Article III standing
         is easily satisfied by liberally construing it in this
7        context.  All that is required is to recognize that the
         injury suffered relative to later-discovered barriers is
8        the threat of being subjected to discrimination suffered
         by virtue of the existence of barriers, whether or not
9        initially encountered."

10  Id.

11       Having explained that, as a general matter, plaintiff is not

12  bound by the specific ADA claims asserted in his complaint under

13  Constitutional standing principles, the court addresses defendant's

14  argument that plaintiff "should not be permitted to construe his

15  complaint as entirely generic and incorporate new factual

16  allegations without seeking amendment" as this would "read the

17  'fair notice' requirement out of Rule 8(a)."  Def.'s Repl. at 4.

18  Indeed, although plaintiff's complaint need only state a "short and

19  plain statement of the claim showing that the pleader is entitled

20  to relief," see Fed. R. Civ. P. 8(a)(2), plaintiff must still

21  provide "fair notice" for specific claims not asserted in his

22  complaint.

23       The court finds that under the circumstances, the alleged

24  barriers in the first Card report are actionable, while the ones

25  contained in the second Card report are not.  Card performed a site

26  inspection on July 13, 2005 and subsequently created a report based

1  on that inspection which identified architectural barriers that he

2  believed were in violation of the ADA Accessibility Guidelines and

3  the California Building Code.  Card Dec. at 2 (September 12, 2005).

4  Defendant concedes that it was aware of these alleged barriers as

5  early as July 29, 2005, over two months before the close of

6  discovery.[5]  It appears to this court that an action on particular

7  barriers lies so long as "the parties and the court [were] able to

8  identify the alleged violations with reasonable certainty."

9  Independent Living Resources v. Oregon Arena Corp., 982 F.Supp.

10  698, 770 (D. Or. 1997); see also Parr v. L & L Drive-Inn

11  Restaurant, et al., 96 F.Supp.2d 105, 1083-84 (D. Haw. 2000)(citing

12  Independent Living Resources).  Rule 8(a)'s "simplified notice

13  pleading standard relies on liberal discovery rules and summary

14  judgment motions to define disputed facts and issues and to dispose

15  of unmeritorious claims."  Swierkiewicz v. Sorema N.A., 534 U.S.

16  506, 512 (2002).  Where, as here, plaintiff discovered new alleged

17  violations during the discovery period that were not pled in the

18  complaint, but disclosed to defendant in sufficient time to permit

19  defendant to address them in discovery and by way of law and

20  motion, the court concludes plaintiff is not precluded from raising

21  these allegations on a motion for summary judgment or at trial.[6]

22  ////

23

24       [5]  The court's scheduling order specified discovery would
    close on October 4, 2005.
25

26       [6]  That is not to say that amendment of the complaint is not
    the better practice - clearly it is.

13

1     As for the barriers contained in the second Card report, the

2  court holds that they are not cognizable in this litigation because

3  defendant did not have sufficient notice that they would be an

4  element of plaintiff's law suit.  It was not until three days *after*

5  the close of discovery, on October 7, 2005, that Card returned to

6  defendant's premises to determine whether the previously-identified

7  barriers were removed.  Consistent with this court's order,

8  plaintiff's counsel instructed Card to "reinspect the location and

9  document any corrections made to the violations that were

10 identified in the first report." Card Dec. at 2.   Rather than

11 reinspect the location and document any corrections previously

12 identified, Card identified twenty-nine other barriers which were

13 not previously identified by plaintiff in his complaint.  See Card

14 Dec. 2-5; Ex. A to Card Dec.  Because the court's scheduling order

15 made clear that discovery would close on October 4, 2005, plaintiff

16 is precluded from asserting any further ADA claims after this

17 deadline without the court's permission.  Put differently, because

18 plaintiff did not provide fair notice to defendant of the new

19 violations, and because he did not comply with the court's

20 scheduling order, he cannot assert these violations now in his

21 motion for summary judgment, or at trial.   To hold otherwise

22 undermines the whole thrust and purpose of scheduling orders.  See

23 Johnson v. Mammoth Recreations, Inc., 975 F.2d 604 (9th Cir. 1992)

24 ("A schedule shall not be modified except upon a showing of good

25 cause and by leave of the district judge") (quoting Fed. R. Civ.

26 P. 16(b)).

1    For the reasons explained above, the court holds that the
2  claims asserted in the first Card report are actionable and shall
3  be adjudicated by this court, but that the claims alleged in the
4  second Card report are not actionable in this suit.  The court now
5  turns to Unruh Civil Rights Act and ADA violations alleged by
6  plaintiff.

7  **B.   THE UNRUH ACT**

8    Plaintiff seeks summary judgment pursuant to the Unruh Act
9  because his claim is predicated upon defendant's violation of the
10  ADA.  Pl.'s Mot. and Opp'n at 2,  20, 23.[7]  He asserts that "a
11  violation of his rights under the ADA is a *per se* violation of his
12  rights under the Unruh Act."  Id. at 23 (italics in the original).
13  Defendant, however, maintains that plaintiff's claims should be
14  dismissed as moot.  They argue that because only injunctive relief
15  may be granted under the ADA, once a plaintiff has received
16  everything the court would order, the claims are moot.  Def.'s
17  Repl. at 10.  Further, they maintain that because the court has
18  jurisdiction over this case because of the federal claims, the
19  court should refuse to exercise supplemental jurisdiction over the
20  state law claims.  Repl. at 10.  I do not agree.

21    First, because there remain disputed issues as to a number of
22  the ADA claims, there remains a live controversy as to the federal
23  claims.  Thus, the court may still exercise supplemental

24  _____

25    [7]  Plaintiff pleads in his complaint that his Unruh Act claim
    is predicated upon the ADA claim.  See ¶ 63 of Compl. ("The Unruh
26  Act also specifically incorporates (by reference) an individual's
    rights under the ADA").

1  jurisdiction over plaintiff's state law claims.  As to defendant's

2  assertion that plaintiff is not entitled to relief once an

3  injunction is inappropriate under the ADA, nothing prevents the

4  court from exercising supplemental jurisdiction even as to those

5  barriers which have been corrected.  I now turn to the provisions

6  of the Unruh Act.

7       The Unruh Civil Rights Act, codified in California Civil Code

8  § 51, provides that "[a]ll persons . . . are entitled to full and

9  equal accommodations, advantages, facilities, privileges, or

10  services in all business establishments of every kind whatsoever."

11  Cal. Civ. Code § 51(b).  The purpose of the Unruh Act "is to compel

12  a recognition of the equality of citizens in the right to the

13  peculiar service offered" by the entities covered by the acts.

14  Marina Point, Ltd. v. Wolfson, 30 Cal.3d 721, 737 (1982)(quotation

15  omitted); see also Strother v. Southern California Permanente

16  Medical Group, 79 F.3d 859 (9th Cir. 1996).

17       Prior to 1992, to prove a claim under the Unruh Act  plaintiff

18  was required to demonstrate that the facility was in violation of

19  Title 24 and that the discrimination he experienced was

20  intentional.  See Harris v. Capital Growth Investors XIV, 52 Cal.3d

21  1142, 1175 (1991)("[W]e hold that a plaintiff seeking to establish

22  a case under the Unruh Act must plead and prove intentional

23  discrimination in public accommodations in violation of the terms

24  of the Act"); Lentini v. California Center for the Arts, 970 F.3d

25  837, 847 (9th Cir. 2004).

26  ////

1    To effectuate its long-stated policy of ridding the state of

2  discrimination, see Warfield v. Peninsula Golf & Country Club, 10

3  Cal.4th 594 (1995), the California legislature amended the Unruh

4  Act in 1992 to broaden the scope of its protection.  As amended,

5  § 51 provides that "[a] violation of the right of any individual

6  under the Americans with Disabilities Act of 1990 . . . shall also

7  constitute a violation of this section."  Cal. Civ. Code § 51(f).

8  It is pursuant to this subsection that plaintiff seeks to recover.

9  See Pl.'s Compl. at 10-12.  Plaintiff claims he was denied his

10 right to "equal and full enjoyment of the premises as provided by

11 the ADA and California law."  Plaintiff's expert testified "that

12 said barriers violate ADAAG standards and the CBC [California

13 Building code]."  Pl.'s Mot. and Opp'n at 21.  While, as a general

14 matter, a plaintiff may rely on both the ADAAG and CBC when

15 pursuing an Unruh claim, the question is whether he may do so where

16 his Unruh claim is based solely on purported violations of the ADA.

17 This issue raises two different questions: Is plaintiff's Unruh

18 claim proceeding only on the amendment allowing recovery under

19 state law for violation of the federal statute?  If so, may

20 plaintiff rely on the CBC in doing so?  The first question is

21 easily resolved.

22    Nowhere in plaintiff's filings is there any suggestion of

23 intentional discrimination.  Accordingly, the only legal theory

24 available to plaintiff on his Unruh claim is that architectural

25 barriers at Home Depot violate the ADA.  It does not follow,

26 however, that where relief is barred under the ADA, relief is also

17

1  barred under the Unruh Act.

2       As I have explained previously, the state legislature, unlike

3  Congress, has provided that an individual may recover damages for

4  a violation of the Unruh Act.  The plain language and purpose of

5  the Unruh Act is to provide that individuals need only prove an ADA

6  violation to obtain relief under the statute, not that they must

7  first obtain relief under the federal statute.  State law requires

8  a liberal interpretation of the Unruh Act.  Isbister v. Boys' Club

9  of Santa Cruz, 40 Cal.3d 72, 75-76 (1985).  Because § 51(f) employs

10 broad language, without any indication of an intent to limit

11 recovery, it seems clear that the legislature intended to provide

12 a remedy for individuals who suffered a violation of the ADA but

13 who could not recover under that Act because the conditions

14 justifying injunctive relief no longer obtain.  See Hubbard v. Twin

15 Oaks Health and Rehabiliation Center, 408 F.Supp.2d at 928-30.  As

16 a result, the court holds that plaintiff may recover under the

17 Unruh Act, even absent relief under the ADA.  The second question

18 seems equally straight forward.

19 **C.   The CBC and the ADA**

20      At various places throughout plaintiff's brief and the Card

21 reports, reliance is placed on the California Building Code as well

22 as the Manual on Uniform Traffic Devices to assert violations of

23 the ADA.  As the parties note, it is clear that the federal statute

24 does not preempt state law where the state law provides "greater

25 or equal protection."  42 U.S.C. § 12201(b).  The question here,

26 however, is not whether state law is more protective, but whether

18

1  a violation of state regulations establishes a barrier for purposes
2  of the ADA.  As I explain below, the ADAAG, the Title III Standards
3  promulgated by the Department of Justice, are the exclusive
4  standards by which to establish architectural barriers under Title
5  III.

6       Section 12183(a)(1) of Title 42 provides that a violation is
7  measured by regulations "issued under this subchapter . . . ."[8]
8  Thus, it would appear that ADA violations are directly tied to the
9  ADAAG.  See Independent Living Resources v. Oregon Arena Corp., 982
10 F.Supp. 698, 746 (1997)("[t]he implication is that the standards
11 are the exclusive source for design requirements.)"

12      In turn the ADAAG defines "accessible" as "a site, building,
13 facility or portion thereof that complies with these guidelines."
14 ADAAG 3.5 (adopted by the DOJ as Standard 3.5).  This language also
15 plainly implies that compliance with the ADAAG, and not another
16 standard, constitutes compliance with the ADA requirements for new
17 construction.[9]

18 ─────────────────

   [8]  The statute provides:

       "a failure to design and construct facilities for first
       occupancy later than 30 months after July 26, 1990, that
       are readily accessible to and usable by individuals with
       disabilities, except where an entity can demonstrate
       that it is structurally impracticable to meet the
       requirements of such subsection in accordance with
       standards set forth or incorporated by reference in
       regulations issued under this subchapter . . . ."

24 42 U.S.C. § 12183(a)(1).

25      [9]  Finally, the court notes that because Congress directed
   that the Department of Justice, in conjunction with the
26 Architectural and Transportation Barriers Compliance Board ("Access

1    For all of the reasons set forth above, the court concludes

2  that the ADAAG constitutes the exclusive standards under Title III

3  of the ADA.

4                                  **IV.**

5                              **THE MERITS**

6    Title III of the ADA prohibits discrimination against

7  individuals on the basis of disabilities in the full and equal

8  enjoyment of the goods, services, facilities, privileges,

9  advantages or accommodations of any place of public accommodation.

10  See 42 U.S.C. § 12182(a).  Title III defines "discrimination" as,

11  among other things, a failure to remove "barriers . . . where such

12  removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv);

13  Pickern v. Holiday Quality Foods Inc., 293 F.3d 1133, 1135 (9th

14  Cir. 2002).  Plaintiff avers that defendant discriminated against

15  him when it failed to remove certain architectural barriers at the

16  Home Depot location at issue in this litigation.

17    Under Title III of the ADA, a plaintiff must prove that (1)

18  he has a disability, (2) defendant's facility is a place of public

19  accommodation, (3) and plaintiff was denied full and equal

20  treatment because of his disability.  To succeed on an ADA claim

21  of discrimination on account of an architectural barrier, the

22  plaintiff must also prove that (1) the existing facility at the

23  ───────────────

24  Board"), issue the ADAAG, and that these standards constitute
    binding regulation, the court is not authorized to evaluate Title

25  III disability discrimination claims under any other standard, and
    to determine what engineering or architectural modifications are

26  necessary, or whether such modifications would be feasible and
    desirable.

1   defendant's place of business presents an architectural barrier

2   prohibited under the ADA, and (2) the removal of the barrier is

3   readily achievable.  See 42 U.S.C. § 12182(b)(2)(A)(iv); see also

4   Pascuiti v. New York Yankees, No. 98 CIV. 8186 (SAS), 1999 WL

5   1102748, at * 5 (S.D.N.Y. Dec.6, 1999) (plaintiff bears the initial

6   burden of proving that barrier removal is readily achievable).  If

7   plaintiff satisfies his burdens, the burden shifts to the defendant

8   to show that removal of the barriers is not readily achievable.

9        It is undisputed that Home Depot is a place of public

10  accommodation.  Further, plaintiff is disabled because he is a

11  paraplegic who must use a wheelchair to travel in public.

12  Plaintiff thus meets the first two elements of an ADA prima facie

13  case.  What remains in dispute is whether plaintiff was

14  discriminated against on account of his disability based on an

15  architectural barrier.

16  **A.   ARCHITECTURAL BARRIERS AND STANDARDS GOVERNING NEW
       CONSTRUCTION**

17

18       Plaintiff contends that defendant violated the ADA by failing

19  to abide by the Department of Justice's Regulations implementing

20  the ADA's public accommodation provisions and the corresponding ADA

21  Accessibility Guidelines ("ADAAG").  These regulations are divided

22  into three categories.  The first category require that newly-

23  constructed public accommodations must comply with specific

24  accessibility requirements set forth in the ADAAG.  See 28 C.F.R.

25  Pt. 36.401; 28 C.F.R. Pt. 36.406.  The second category concerns the

26  accessibility requirements imposed on public accommodations altered

after January 26, 1992. See id.  The third category requires the

removal of architectural barriers in preexisting public

accommodations (those designed and constructed for occupancy before

January 26, 1993).  See 28 C.F.R. Pt. 36.304.  Under the ADA's

continuing barrier removal obligation, it is discriminatory for

owners, operators, lessors or lessees to fail to remove

architectural barriers that deny disabled persons the goods and

services offered to the general public.  See Hubbard v. Twin Oaks

Health and Rehabilitation Center, 408 F.Supp.2d 923, 930 (E.D. Cal.

2004)(citing Parr v. L & L Drive-Inn Restaurant, 96 F.Supp.2d 1065,

1086 (D. Haw. 2000)).

For purposes of the ADA, the Home Depot facility at issue

falls within the first category described, as the building was

constructed in 1998 and first opened for business on August 27,

1998.[10]  The ADA requires that newly-constructed facilities be

"readily accessible and usable by individuals with disabilities."

See 42 U.S.C. § 12183(a)(1).  This command to build accessible

facilities is excepted only if meeting the requirements of the Act

would be "structurally impracticable."  Id.[11]; See also Long v.

---

[10]  On April 6, 2006, the court ordered the parties to submit
evidence as to when the facility at issue in this litigation was
built.  On behalf of the parties, plaintiff's counsel submitted a
verified response to plaintiff's interrogatories which states that
"[d]efendant does not believe that there have been 'alterations'
to the store since its initial construction," and that "[t]he
building was constructed in 1998 and opened for business on August
27, 1998."  Response to Interrogatory Nos. 7 and 8.

[11]  See also 28 C.F.R. Pt. 36.401(c)(structural
impracticability means "those rare circumstances where the unique
characteristics of the terrain prevent the incorporation of

22

1   Coast Resorts, Inc., 267 F.3d 918, 923 (9th Cir. 2001)("We need not

2   decide whether the ADA forecloses the possibility that a court

3   might exercise its equitable discretion in fashioning relief for

4   violations of § 1283(a) . . . because there is no room for

5   discretion even if it exists")(citation omitted)).

6        Below, the court addresses the thirteen ADA violations alleged

7   in the complaint, which plaintiff moves on in his summary

8   judgment motion, as well as the violations identified by Joe Card

9   in the first expert report.

10  **B.  ADA VIOLATIONS IDENTIFIED IN THE COMPLAINT**

11       **1.  Barriers Which Have Been Remedied**

12       Because under the ADA only injunctive relief may be granted

13  to a private party, 42 U.S.C. § 2000a-3(A); see also Wander v.

14  Kaus, 304 F.3d 856, 858 (9th Cir. 2002), once a plaintiff has

15  received everything the court would order, the federal claims are

16  moot.   Independent Living Resources v. Oregon Arena Corp., 982

17  F.Supp. 698, 771 (1997); Dufresne v. Veneman, 114 F.3d 952, 953-954

18  (9th Cir. 1997) (finding plaintiffs' suit moot when spraying they

19  sought to stop was completed before resolution of the suit).   Thus,

20  generally, a defendant's successful remedial efforts will render

21  a plaintiff's ADA suit subject to dismissal as moot.   Pickern v.

22  Best Western Cove Lodge Marina Resort, 194 F.Supp.2d 1128, 1130

23  (E.D. Cal. 2002).

24  ////

25  _____

26  accessibility features.").

23

1    The parties do not dispute that five of the thirteen barriers

2  complained of in the complaint have been remedied: (1)  The tow-

3  away sign has been replaced and the number is now 2 ½" tall, Def.'s

4  SUF 5; (2) Home Depot has painted "No Parking" on the pavement of

5  the access aisles to the van accessible parking lots, Def.'s 7; (3)

6  The ISA signage on the entrance door at all three entrances to the

7  store is now placed 60" above the ground, Def.'s SUF 8; (4) Home

8  Depot installed a U-shaped handle on the designated accessible

9  stall door in the men's restroom, Def.'s SUF 13; and (5) The toilet

10  paper dispenser in the men's restroom has been positioned so that

11  it does not protrude more than four inches from the wall, Def.'s

12  SUF 14.  Home Depot's remedial efforts renders Eiden's ADA claims

13  as to these barriers moot.[12]

14        **2.  Detectable Warnings at Travel Routes**

15    Plaintiff seeks relief as to a barrier that is not related

16  to his personal disability of non-mobility.  In his complaint,

17  Eiden alleges that "[t]here are no detectable warnings at the route

18  for a person in a wheelchair traveling through vehicle areas to

19  reach the ramp," citing ADAAG 4.29.5, Detectable Warnings at

20  Hazardous Vehicular Areas.  Compl., Ex. A at 4; Card Dec., Ex. B,

21  Part 1.  Eiden, however, has not suffered an "injury in fact" due

22  to the absence of detectible warnings because it is undisputed that

23  he is not visually impaired and that such accommodations are

24  ─────────────────

25        [12]  As the court noted previously in this order, plaintiff may
recover under the Unruh Act for damages even absent relief under
26  the ADA for violations which were rendered moot by Home Depot's
remedial efforts.

1  reserved for the visually impaired. Def.'s SUF 16.[13] Eiden lacks

2  standing to assert this claim.  See Access Now, Inc. v. South

3  Florida Stadium Corp., 161 F.Supp.2d 1357, 1364 (S.D. Fla. 2001)

4  ("To the extent that Plaintiffs complain about violations that

5  would discriminate against blind or deaf persons, or any

6  disabilities other than that suffered by Plaintiff Resnick, they

7  lack standing to pursue such claims."); Martinez v. Longs Drug

8  Stores, Inc., 2005 WL 2072013, *2 (E.D. Cal. 2005).

9      Standing is limited to claims for which the plaintiff is

10  "among the injured." Lujan v. Defenders of Wildlife, 504 U.S. 555,

11  560-561 (1992).  While the statute requires plaintiff's assertion

12  that the defendant must be in compliance with the ADA regulations,

13  allowing plaintiff to sue on behalf of all the disabled would

14  extend beyond the limitations of Article III because plaintiff

15  cannot ultimately prove "injury in fact" as to this barrier which

16  does not affect him.  A plaintiff must have a "personal stake in

17  the outcome" sufficient to "assure that concrete adverseness which

18

19      [13]   The relevant ADAAG section provides the a detectable
warning is defined as a standardized surface feature built in or
20  applied to walking surfaces or other elements to warn visually
impaired people of hazards on a circulation path." 28 C.F.R. Pt.
21  36, App. A ADAAG 3.5.

22      Section 4.29.2 of the ADAAG states that:

23      Detectable warnings shall consist of raised truncated
      domes with a diameter of nominal 0.9 in (23 mm), a
      height of nominal 0.2 in (5 mm) and a center-to-center
24      spacing of nominal 2.35 in (60 mm) and shall contrast
      visually with adjoining surfaces, either light-on-dark,
25      or dark-on-light (emphasis supplied).

26  These sections clearly pertain to those who are visually impaired.

1  sharpens the presentation of issues upon which the court so largely

2  depends for illumination of difficult . . . questions." Baker v.

3  Carr, 369 U.S. 186, 204 (1962). Accordingly, the court holds that

4  this claim must be DISMISSED due to lack of standing.

5       **3.  Cross-Slope of Wheelchair Route**

6       Defendant moves for summary judgment as to all the barriers

7  alleged in plaintiff's complaint, but say nothing at all about this

8  particular allegation. Plaintiff maintains in his complaint that

9  the cross-slope of the [wheelchair route] exceeds 2%, and that it

10 is actually 7.3%, in violation of the ADAAG 4.3.7.[14] Plaintiff's

11 expert report includes pictures of various cross slopes which

12 exceed the allowable 2% slope pursuant to the ADAAG. Card Dec.,

13 Ex. B, Part 3.

14      Under summary judgment practice, the moving party "[a]lways

15 bears the initial responsibility of informing the district court

16 of the basis for its motion, and identifying those portions of "the

17 pleadings, depositions, answers to interrogatories, and admissions

18 on file, together with the affidavits, if any," which it believes

19 demonstrate the absence of a genuine issue of material fact.

20 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Because

21 defendant has failed to meet its burden of informing the court of

22

23      [14]  Section 4.3.1 provides that "[a]ll walks, halls,
    corridors, aisles, skywalks, tunnels, and other spaces that are

24  part of an accessible route shall comply with 4.3."

25      Section 4.3.7 of the ADAAG, which applies specifically to this
    allegation, provides that "[a]n accessible route with a running
    slope greater than 1:20 is a ramp and shall comply with 4.8.

26  Nowhere shall the cross slope of an accessible route exceed 1:50."

the basis for its motion as to this "barrier," and because

plaintiff has tendered evidence apparently showing that there is

an ADAAG violation with respect to the cross-slope, plaintiff's

motion with respect to this barrier is GRANTED.

**4.  Directional Signage Along the Route of Travel**

Plaintiff alleges in his complaint that defendant is not in

compliance with the ADAAG because "[t]here is no directional

signage along the route of travel from the public streets or

sidewalks to the building entrance."  Compl., Ex. A at 3, citing

ADAAG 4.1.2 (7).  The cited section, however, does not discuss

directional signage along routes of travel from public streets or

sidewalks to the building entrance, but rather relates to building

signage.[15]  Because plaintiff has failed to meet its burden of

---

[15]  This section provides as follows:

(7) Building Signage. Signs which designate permanent rooms and spaces shall comply with 4.30.1, 4.30.4, 4.30.5 and 4.30.6. Other signs which provide direction to, or information about, functional spaces of the building shall comply with 4.30.1, 4.30.2, 4.30.3, and 4.30.5. Elements and spaces of accessible facilities which shall be identified by the International Symbol of Accessibility and which shall comply with 4.30.7 are:

(a) Parking spaces designated as reserved for individuals with disabilities;

(b) Accessible passenger loading zones;

(c) Accessible entrances when not all are accessible (inaccessible entrances shall have directional signage to indicate the route to the nearest accessible entrance);

(d) Accessible toilet and bathing facilities when not all are accessible.

1   informing the court of the basis for its motion as to this barrier,

2   the court determines that defendant has not violated this section

3   of the ADAAG.  Defendant's motion for summary judgment as to this

4   alleged barrier must GRANTED.

5       **5.  Barriers Where Disputed Facts Remain**

6           **a.  Parking Spaces Closest to Entrance**

7       In his complaint, plaintiff alleges that "[t]he accessible

8   parking spaces are not dispersed and located closest to the

9   accessible entrances" and that "[t]here are no disabled parking

10  spaces next to the garden entrance," in violation of ADAAG 4.6.2.[16]

11  Compl., Ex. A at 5 (Picture 8).  Home Depot moves for summary

12  judgment asserting that "twelve (12) accessible parking spaces have

13  been installed at the closet location to the *main entrance* of the

14  Store." Def.'s Mot. at 5.  This appears to be undisputed.  Whether

15  there exists accessible parking spaces located at the entrances to

16  the *nursery/garden area*, however, remains in dispute.  Because the

17  court is unable to determine based on plaintiff's evidence whether

18  the garden area entrance contains parking spaces, <u>see</u> picture #8,

19  Ex. A to Compl., the parties' motions must be DENIED as to this

20  alleged barrier.

21  ////

22  ////

23  ─────────────

        [16]  This section provides that:
24

25      In buildings with multiple accessible entrances with
        adjacent parking, accessible parking spaces shall be
26      dispersed and located closest to the accessible
        entrances.

1              **b.  Sales Counter Height**

2         Plaintiff maintains that "[t]he sales counter is 44 inches in

3    height at the customer service desk," in violation of the ADAAG

4    § 7.2(1).[17]   See Compl., Ex. A at 9.   Home Depot contests this,

5    maintaining that all counters are 36 inches above the floor.  Boggs

6    Dec. ¶ 8.   Plaintiff's expert, Joe Card, maintains that the

7    Customer Service Counter is not accessible with respect to height.

8    Card Dec. ¶ 8(p).   Because there is a disputed issue of material

9    with regard to this barrier, the parties' motions as to this

10   barrier are DENIED.

11             **c.  Accessible Check Stands and Signage Identifying**
                    **Accessible Checkout Aisle**

12

13        Plaintiff asserts that "[t]here was [sic] no accessible check

14   stands and that the "[s]ignage identifying accessible checkout

15   aisle was not mounted on any checkout locations, in violation of

16   ////

17   ////

18   ─────────────────

19        [17]  Section 7.2(1) provides that:

20        In areas used for transactions where counters have cash
         registers and are provided for sales or distribution of
         goods or services to the public, at least one of each
21        type shall have a portion of the counter which is at
         least 36 in (915mm) in length with a maximum height of
22        36 in (915 mm) above the finish floor. It shall be on an
         accessible route complying with 4.3. Such counters shall
23        include, but are not limited to, counters in retail
         stores,  and  distribution  centers.  The  accessible
24        counters must be dispersed throughout the building or
         facility.  In  alterations  where  it  is  technically
25        infeasible  to  provide  an  accessible  counter,  an
         auxiliary  counter  meeting  these  requirements  may  be
26        provided.

                                29

1  ADAAG § 7.3.3.[18]  Compl., Ex. A at 10.   In the course of this

2  litigation, Home Depot claims that it mounted ISA signage above

3  three (3) of its thirteen (13) checkstands.  Boggs Dec. ¶ 7.   This

4  section of the ADAAG, however, also requires "accessible" checkout

5  aisles.  Plaintiff maintains that although there were signage

6  indicating accessibility, during his visit to Home Depot no

7  accessible check stands were open to him.   Pl.'s Opp'n at 17.

8  Defendant maintains that it has a policy of keeping checkstand one

9  open at all times.  Def.'s SUF 11.  The parties' tendered evidence

10 demonstrates that a genuine issue of material fact is in dispute

11 as to whether at least one accessible checkout aisle was available

12 to plaintiff when he visited Home Depot.   The parties' motions as

13 to this barrier are DENIED.

14              **d.  Movable Obstructions**

15      Two of Eiden's claims involve movable obstructions.  Plaintiff

16 alleges that shopping carts were left in disabled parking spaces

17 and access aisles creating an obstruction for wheelchair users in

18 violation of the ADAAG.  Compl., Ex. A at 5.  He also avers that

19 some aisles in the store were obstructed by merchandise narrowing

20 the width of the aisles.  Compl., Ex. A at 7.   Defendant argues,

21 however, that movable objects are not governed by the ADAAG.

22 Plaintiff fails to cite any authority for the proposition that

23 movable objects, such as shopping carts or merchandise in the

24 ⎯⎯⎯⎯⎯⎯⎯⎯

25      [18]   Section 7.7.3 states that "[s]ignage identifying
   accessible check-out aisles shall comply with 4.30.7 and shall be
26 mounted above the check-out aisle in the same location where the
   check-out number or type of check-out is displayed."

1    aisles, falls within the ambit of the ADAAG.  Defendant, however,

2    cites authority that is inapposite to the issue at bar.  Lieber v.

3    Macy's West, 80 F.Supp.2d 1065 (N.D. Cal 1999)(Patel, J.), does not

4    stand for the proposition that the ADA does not govern movable

5    objects, but that the ADA does not address access to merchandise

6    located on movable display racks.

7        Neither the ADA nor the ADAAG addresses movable objects.  The

8    statute's implementing regulations explicitly require, however,

9    that "[p]ublic accommodations are required to maintain those

10   features of their facilities that need to be readily accessible to

11   people with disabilities." See 28 C.F.R. Pt. 36.211(a).  The

12   regulations also state that "[i]solated or temporary interruptions

13   in access due to maintenance or repairs are not prohibited."  See

14   Pt. 36.211(b).  The regulations appear to suggest that although

15   defendants such as Home Depot are required to maintain ready

16   accessability, they would not be liable for "isolated" or

17   "temporary" movable objects which temporarily restrict access where

18   the barrier is caused by maintenance or repair.

19       The Justice Department has also determined that regular use

20   of an accessible route for storage of supplies would violate Title

21   III, but an isolated instance of placement of an object in an

22   accessible route is not a violation if the object is promptly

23   removed. See United States Department of Justice, Civil Rights

24   Division, The Americans with Disabilities Act: Title III Technical

25   Assistance Manual § III-3.7000 (1993); see also Bragdon, 524 U.S.

26   624, 646 (citing Technical Assistance Manual and noting that

1  Justice Department's views entitled to deference).

2      Two cases which have addressed this issue, a Colorado Court
3  of Appeals case and an unpublished New Hampshire District Court
4  case, have both held that isolated failures to maintain access
5  routes or parking spaces, without more, are not covered by the ADA.
6  See Tanner v. Wal-Mart Stores, Inc., 2000 DNH 34 (D. N.H. 2000)
7  (isolated incident of failure to remove shopping carts does not
8  constitute a Title III violation); Pack v. Arkansas Valley
9  Correctional Facility, 849 P.2d 34, 38 (Colo Ct. App. 1995)
10 (isolated instance of negligence regarding failure to remove ice
11 and snow from handicapped parking zone not an ADA violation).  Home
12 Depot argues that it has a "long-standing, widely-disseminated and
13 enforced written policy of maintaining an accessible route of at
14 least 32 inches throughout the store."  Def.'s Mot. at 5; Def.'s
15 SUF 3.  Eiden argues that "policy or no policy, [the policy] is not
16 enforced" and asserts that he has experienced "blocked paths of
17 travel."  Disputed facts remain as to whether Home Depot had a
18 practice of failing to remove obstructions from accessible routes
19 of travel or parking spaces.  The parties' motions as to the
20 movable obstructions are DENIED.

21      **e.  Alleged Barriers Identified in the First Card Report**

22      As the court explained above, only the allegations contained
23 in the first Card report (filed with the court on September 12,
24 2005) are actionable.  The court has carefully examined the Card
25 report and plaintiff's papers, and although the Card report listed
26 twenty-three violations, only about half of those violations are

1   new ones, not already contained in plaintiff's complaint and thus

2   discussed above in this order.  The new violations are described

3   in 7 (a), (b), (c), (d), (g), (i), (p), (q), (r), (s), (t), (v),

4   and (w) of Joe Card's declaration.

5       Although plaintiff moves on all alleged barriers contained in

6   the complaint and the Card reports, only five of the violations

7   contained in the first Card report are even mentioned in

8   plaintiff's papers, and plaintiff appears to have tendered evidence

9   only with regard to these barriers.  Given the large number of

10  exhibits and the lengthy briefs filed by the parties, the court has

11  already expended an excessive amount of time adjudicating the

12  claims made by the parties, which they often fail to address in a

13  careful and orderly manner.  As has been said,"'[j]udges are not

14  like pigs, hunting for truffles buried in' the record."

15  Albrechtsen v. Board of Regents of University of Wisconsin System,

16  309 F.3d 433, 436 (7th Cir. 2002) (quoting United States v. Dunkel,

17  927 F.2d 955, 956 (7th Cir. 1991)).  Under the circumstances, the

18  court will only address the barriers discussed by plaintiff in his

19  motion for summary judgment and opposition brief, and only the

20  alleged barriers where evidence is tendered.  See Pl.'s Mot. and

21  Opp'n at 5-6.[19]  As discussed further below, for various reasons,

─────────────

22

23      [19]  These violations are described by Joe Card in his 7(a),
    (b), (c), and (d) of his September 12, 2005 declaration.

24  Unfortunately, because defendant argues that plaintiff lacks
    standing to even move on allegations contained in the Card report,
    their papers fail to discuss these allegations.  Defendant,

25  however, argues in its response to plaintiff's statement of
    undisputed facts ("SUF").  While hardly the appropriate place, the

26  court will consider the arguments defendant made in its response

1  the court must DENY plaintiff's motion as to these claims and GRANT
2  defendant's motion.

3                    **i.   Towaway Signage**

4       Plaintiff argues that tow-away signage must be provided
5  adjacent to the disabled parking and must have the proper
6  information.  Plaintiff argues that the sign's "reclaim information
7  is not in reflective white letters," citing CBC § 2-7102(d) and
8  D.O.T. § R1008B.  Pl.'s Mot. and Opp'n at 6.  As defendant rightly
9  notes, plaintiff only cites to the California Building Code and the
10 Manual on Uniform Traffic Devices which the court determined above
11 was improper under the plaintiff's pleadings.  Accordingly,
12 plaintiff's motion is DENIED and defendant's motion is GRANTED as
13 to this alleged barrier.

14                **ii.   Accessible Parking Signage**

15      Plaintiff maintains that the sign stating that the space is
16 van accessible violates ADAAG § 4.6.4 in that it must be mounted
17 below the International Sign of Accessibility ("I.S.A."), and that
18 the accessible parking signage "is not mounted at a height of
19 minimum of 80 inches, when the sign is in a path of travel as
20 required by ADAAG § 4.2.2."  Pl.'s Mot. and Opp'n at 6.  Defendant
21 takes issue with these allegations.  The court has examined
22 defendant's exhibits, and in fact, defendant has provided blue and
23 white ISA signage stating "Van Accessible."  Further, the words
24 "Van Accessible" are mounted below the I.S.A.  See Boggs Dec. at

25  _____

26 SUF.

1  ¶ 4 and Ex. B.  Plaintiff's motion as to this barrier is DENIED and

2  defendant's motion is GRANTED.

3      As to the allegation that the accessible parking signage is

4  not mounted at a height of 80 inches, plaintiff cites to ADAAG

5  § 4.2.2.  However, that section of the ADAAG refers to "Width for

6  Wheelchair Passing."[20]  Because plaintiff has failed to tender

7  evidence suggesting that defendant has violated that particular

8  section of the ADAAG, as he must, plaintiff's motion is DENIED as

9  to that barrier, and defendant's motion is GRANTED.

10                  **iii.   ISA on Exit Doors**

11     Plaintiff avers that at exit doors throughout the store, the

12  "I.S.A. that is provided is not a white figure on a blue background

13  as required by CBC § 1117B.5.8.1," citing SUF 23.  The allegation

14  only addresses the California Building Code.  Accordingly,

15  plaintiff's motion as to this alleged barrier must be DENIED and

16  defendant's motion must be GRANTED.

17               **iv.   ISA Signage for Restroom**

18     Finally, plaintiff contends that defendant has violated

19  § 4.30.6 of the ADAAG by not mounting the ISA signage on the wall

20  adjacent to the restroom door, not on the door itself.[21]  Pl.'s

21  _____

22     [20]  That section of the ADAAG states that "[t]he minimum width
   for two wheelchairs to pass is 60 in (1525 mm)."

23     [21]  Section 4.30.6 of the ADAAG states:

24     Where permanent identification is provided for rooms and
       spaces, signs shall be installed on the wall adjacent to
25     the latch side of the door. Where there is no wall space
       to the latch side of the door, including at double leaf
26     doors, signs shall be placed on the nearest adjacent

                              35

1   Mot. and Opp'n at 6.   The court must DENY plaintiff's motion and

2   GRANT defendant's motion as to this alleged barrier because, as

3   defendant argues, this ADAAG requirement applies to those who are

4   blind.   Plaintiff's disability is his immobility.   As the court

5   explained in the analysis pertaining to "Detectable Warnings at

6   Travel Routes," standing is limited to claims for which the

7   plaintiff is "among the injured." <u>Lujan v. Defenders of Wildlife</u>,

8   504 U.S. 555, 560-561 (1992).   Defendant's motion must be GRANTED

9   as to this barrier and plaintiff's motion must be DENIED.

10                                     **V.**

11                                **CONCLUSION**

12       The parties' motions are GRANTED in part and DENIED in part

13   as specified above.[22]

14       IT IS SO ORDERED.

15       DATED: May 24, 2006.

16                              LAWRENCE K. KARLTON
17                              SENIOR JUDGE
                                UNITED STATES DISTRICT COURT
18

19   ───────────────────

20       wall. Mounting height shall be 60 in (1525 mm) above the
     finish floor to the centerline of the sign. Mounting
21       location for such signage shall be so that a person may
     approach within 3 in (76 mm) of signage without
22       encountering protruding objects or standing within the
     swing of a door.

23       [22]   Plaintiff requests from the court a final judgment of
     $20,000.00 in statutory damages pursuant to the Unruh Act (five
24   visits multiplied by the statutory minimum of $4,000.000 per
     visit).   <u>See</u> Pl.'s Mot. and Opp'n at 23.   Because there remain
25   disputed facts as to the violations upon which plaintiff predicates
     his Unruh Act claims, it is inappropriate at this time to determine
26   the award of damages.

                                     36